to assist us this morning. If your case has been set for oral argument, we only hear about 20 percent of our appeals in oral argument. It's because we think that the case, some judge of the court at least, thinks that the case is a little more difficult and could benefit from oral argument and from a little conversation between the court and the parties. So, without further ado, anything else, we'll hear first United States v. Joyner and United States v. Sturgis. Mr. Brunner, I'm sorry, Ms. Brunner, I'm sorry. Usually, I don't know, it seems like this week the government's been over here and the defense lawyers have been over here. My apologies. You have the first name of my younger daughter, Victoria, so I didn't notice that. Your Honor, and I'm Saralene Durrett, and that is Victoria Brunner. Okay. Well, I had on my sheet, it said Ms. Brunner would be first, but that's okay. That was our error, Your Honor. I'm sorry. All right, Ms. Durrett, then please speak to us. Thank you. May it please the court, as you know, my name is Saralene Durrett, and I represent Mr. Sturgis in this case. Ms. Brunner will be addressing her client's counsel at trial, and I'll be addressing the second issue in my brief, which is the district court's decision to provide the indictment to the jury in response to a question that they had. Okay. So, moving right in, this court has said that no fact, not even an undisputed fact, may be determined by a judge. The plea of guilty puts all of the evidence in issue, even the most patent truth, and the trial court may never instruct a verdict, either in whole or in part. And in this case, what we have is during deliberations, the jury sends out a note to the trial court saying, can we have a list of the dates and locations that the robberies occurred? And can we have a list of the times that the robberies occurred? The district court discussed this with the parties. The government suggested referring the jury back to the evidence or some of the evidence. The court said, I think that is improper. And during that discussion, the court realized that the jury did not have a copy of the indictment. Even though it had told the jury earlier in the trial that it would be supplied a copy of the indictment. That's correct. And so, when the court realized that, the court called the jury back into the courtroom and explained, this indictment has a list of the dates and locations the government is alleging in the indictment. I hope that helps you with the first part of your question. She then says, as to the second part of your question about the times, we can't add evidence in now that the evidence is closed. You'll have to rely on your memory of the evidence to answer that part of the question. So, in doing so... Well, you don't think there's anything wrong with a judge giving the jury a copy of indictment. In my experience, that's what you do in every case. That's correct, Your Honor. The judge has discretion to provide the indictment to the jury, and no one is objecting to the fact that the judge could have provided the indictment prior to the jury going out for deliberations. The problem came in when the judge provided the indictment in response to the jury's question. In essence... A logical question on their part, because they've got a lot of counts, and they're trying to figure out which date is what date on a particular count that they're dealing with. But your problem is that the judge did not give a limiting instruction. Is that right? That's correct, Your Honor. And your second problem, I take it, is that as the judge continued with the instruction and said that she couldn't provide any evidence with regard to the times, it was an inference that perhaps the first part of the instruction was a comment on the evidence. That's correct, Your Honor. She was implying that the indictment either was evidence or that the evidence presented at trial conformed with the allegations in the indictment. And she did not explain to them, as to the first part of your question, you have to rely on your memory of the evidence. She didn't say that, though, right? I mean, your argument is that that's an implication. Well, Your Honor, I don't think there's any other reading of her response that suggests she's telling them this is not evidence. It's in direct contradiction to her previous instruction, which is the indictment is not evidence. But she instructed, did she not, the jury. Now, talking about a particular date, you'll see that the indictment charges that a crime was committed on or about a certain date. The government doesn't have to prove that the offense occurred on an exact date. The government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged. Right, Your Honor. And those are in the initial instructions that went back to the jury. Which we have to assume that the jury followed. Right. But in the end, the jury was instructed by giving them the indictment, here are the dates. In essence, those elements. No, what she said was these are the counts that are alleged in this case, right? And there's no other information there to suggest the jury knew it had to rely on its memory to compare to the allegations. But the judge did include in the written instructions an instruction that the indictment is not evidence, right? I see my time is concluding. You may finish. She did, Your Honor. But the problem is the judge, even though the judge has discretion to provide the indictment, she doesn't have discretion to misstate the law. And by saying here's the answer to your question, it's this document, she's misstating the law. She said, I hope this will be helpful to you in answer for your first question, right? That's not a misstatement of the law, is it? I mean, it could be helpful as they go through it and they need to have the indictment, they should have the indictment, that it had been promised, the indictment. And then when they're going through the evidence and their memory of the evidence, they say, oh, this is what's alleged. Did the government prove that? Well, Your Honor, by dividing the question into two parts, I think we have a problem suggesting that the first part can be answered with a document that was given to them. And the second part has to be answered based on your memory of the evidence. I think the court is telling them those elements have been satisfied. Thank you. We'll now hear from Ms. Brunner. Ms. Brunner. Good morning. May it please the court. My name is Victoria Brunner and I represent Mr. Joyner. My plan is to focus on Mr. Joyner's four motions for new counsel. But of course, if the court has any questions on any other issues, please let me know. Mr. Joyner did his absolute best as a layperson on four separate occasions to explain to the court that he and his attorney, Mr. Morrison, had a complete breakdown in communication and irreconcilable differences. In each instance, instead of focusing on what Mr. Joyner was alleging, which met the standard under Calderon, the court focused on his belief that Mr. Morrison was a great attorney. I'm not going to stand up here and tell this court that Mr. Morrison is not a great attorney. He's a colleague of mine. He's a great attorney. But even the best attorney isn't the best attorney for every defendant. And I think the transcripts make clear that Mr. Morrison was not a good fit for Mr. Joyner. And I think that Mr. Morrison conceded that on multiple occasions. You say good fit. Are you talking about personality and demeanor and that sort of thing or some level of competence? They had a very difficult time communicating, is what Mr. Joyner kept explaining to the court. And Mr. Morrison did not seem to disagree. In between the first motion that Mr. Joyner filed in the hearing, which was approximately 20 some odd days. I thought most of their dispute was something about excessive force at the time of arrest. And then an argument that he didn't, that your client didn't appreciate the way he responded with demonstratively shuffling papers or tossing a paper or something. I think that was a small part of it that was mentioned in my brief and the government's brief. I think that the biggest issue and what Mr. Joyner kept expressing is I can't communicate with him. I argue with him. He argues with me. He yells at me. He thinks I'm guilty. He tells me I'm guilty. And between the, when the first motion was filed in the hearing, Mr. Morrison had said to the court, I haven't even seen him. So give me something. Okay. A lot of times criminal defense lawyers, good ones do push back on clients that have unreasonable expectations. That's their job. What would you say your top three specific things are that your client believes Morrison either didn't do properly or omitted to do? I'll go right to the prejudice. I think the most egregious example of prejudice, Your Honor, is the fact that on the day before the court set the trial date, Mr. Morrison filed a demand for a speedy trial. The very next day, he joined the government's motion for a continuance on the basis that the government wasn't ready and their witnesses weren't available. In that delay between the granting of that joint motion for continuance in the new trial, Mr. Stowers pled guilty and cooperated. So I think that is a prime example of the prejudice he suffered. Obviously, the government has conceded that there was sentencing error that needs to be reversed. So that's another example of the prejudice that he suffered. And then he failed to object to the R&R on the GPS tracker, which made me unable to raise it on appeal. And he failed to anticipate a potential motion to sever issue with Mr. Sturgis giving post-arrest statements. The Bruton issue. Correct, Your Honor. And it's not just the Bruton issue. The government, in their response brief, argued that Mr. Morrison didn't even preserve the issue in whole that I'm raising. So I think the government has stated, Mr. Morrison failed to preserve this issue that we're attempting to raise on appeal. So I think those are the examples of prejudice. But I believe that, I think that the speedy trial is the most egregious because the government, when talking about the evidence against Mr. Joyner, states that Mr. Stowers' testimony was some of the strongest evidence against Mr. Joyner. I apologize. My time is up. Thank you, Ms. Stratton. You've saved some time for rebuttal, as has, I mean, I'm sorry, Ms. Brunner. I keep looking down at the sheet of paper and I'm confused. Both of you have saved some time for rebuttal. Mr. Treanor. May it please the court, counsel. I'm Will Treanor, along with my colleague at the table, Mary Webb. We represented the United States in this trial and we wrote the brief on this appeal. Your Honor, I think one of the most helpful things in getting to the issue about Judge Ross giving the jury a copy of the indictment is you just look at document 184, which is the verdict form. It's a five-page verdict form and it just says, as you would expect, count one robbery, guilty, not guilty. No dates, no hint of which robbery is which. So you just imagine the jury going back to the jury room. They elect a foreman, they get to work, and it comes time to check guilty or not guilty and, you know, they would like a little help on, well, which one does this should give a limiting instruction when the judge sent the indictment back? Your Honor, I believe I did not object at the time. I wouldn't object. I would not have objected to a limiting instruction. Judge Ross didn't. She felt like she didn't have to give one. She had told the jury three times that an indictment is not evident. So when she gave them the jury, she alleges. And so the question is, did she abuse her discretion in doing that? We think not. And we submitted last week a supplemental authority on February 22nd. This court decided it is a decision in Keenan-Joiner, and that also involved a request for a supplemental instruction. And this court explained that to have, before you're going to reverse a conviction based on a requested jury instruction, you must have a substantial and ineradicable doubt that the judge failed to correctly lead the jury, failed to correctly guide the jury. In this case, we have Judge Ross explaining to the jury three times the indictment is not evidence, and then she tells them when she gives it to them, I hope this will be helpful. And if you look at the verdict form, you see they needed a little help on just that. And then we also, in Joiner, in Joiner it was phrased as abuse of discretion. We also cited the Supreme Court case in Nieder about harmless error. In looking at the requested instruction, this court also looks at the instructions as a whole. And then what was the case about? And this case was about identity. No one argued about the locations or the times of the robberies, and that was all established by very substantial evidence from the victim witnesses to the many of the videos had time and date stamps. The loss managers all talked about locations and losses. And we had two exhibits. Exhibit 36 was the FBI cell phone exhibit, and it has a map of all the locations and the dates and then the times that the defendant's cell phones were hitting on towers near those drug stores. And then Exhibit 55 was the case agent, Dane Henriquez, and he explained just the distance from Mr. Joiner's apartment to these different locations. But Exhibit 55 again lays out all the locations, and none of that was contested. It was all about identity. So for that reason, we think Judge Ross did not abuse her discretion in helping the jury, giving them a copy of the indictment. Now, turning to the counsel question, the problem with the counsel argument, I think both in Mr. Sturgis and Mr. Joiner's brief and then we hear today the question, the complaint, it wasn't a good fit. And that's not the standard, as this court knows, is good cause, not good fit. We have to have a complete communication and breakdown. Breakdown and communication, excuse me. And we see Judge Baverman gave Mr. Sturgis a new lawyer in October 2015. That's Document 51. So Judge Baverman is not averse to giving people new lawyers, but he had no evidence here that there was an impasse, that these people weren't communicating. They're arguing, they are communicating. And I think in briefing this issue, if you go back and look at the issues she raises about these discrete events that show the prejudice, the speedy trial issue, for example, the sentencing error, she says here are these things that occurred as a result of the disagreement between the client and counsel that prejudiced her client. Yes, Your Honor. So the motion, the joint motion to continue, that's Document 134. And in this document, the AUSA Ms. Webb explains she would just be coming off of leave. But also Mr. Sturgis' lawyer, Mr. Trost, had a trial and he said he was not going to be ready. And then, so you have the parties moving for a continuance. And then my understanding of the argument is that somehow Mr. Stowers would not have pleaded guilty if they had gone to trial on June 28th instead of September 20th. And that's just whole speculation of what Mr. Stowers was going to do and the timing of when he was going to plead guilty. And there's just not enough evidence to support the inference that Mr. Stowers would have pleaded guilty if they had gone to trial on, I mean, if he'd gone to trial with the other two instead of Mr. Stowers. Of course, the Speedy Trial Act, it isn't a ground for exclusion if a defendant with which one is joined and has not been severed. If there's an extension for that person, then not clear Mr. Marston's argument would have been well received anyway. Yes, Your Honor. Thank you. Yes, and then with regard to the sentencing error, you know, I was asleep on that one. We all missed that there was a one point mistake in the assessment of the multiple count adjustment. The judge actually, based on our motion, sentenced him on a downward variance below what would have been the lowest level if the guidelines had been calculated correctly. I believe if they had been calculated correctly, his range would have been 108. The bottom would have been 108, but we recommended 8 years or 96 months, which is what she sentenced him to on that plus the 32 years on the gun count. So there's no prejudice on the miscalculation of the guidelines. I thought that you had conceded that there was a sentencing error as to joining. Well, we recognize, Your Honor, it should have been that lower level, and so that's, and I believe every defendant has the right to have their guidelines calculated correctly. So that's why we'd say it should go back. The Molina-Martinez under that precedent, we'd have to vacate it. You agree with that? Yes, Your Honor. We're going to ask for the same sentence, which will still be below that. You asked for the 96 months. Is that what you said? And that's what he got? Yes, Your Honor. All right. And any other colloquy about that from the defense? I gather they did not oppose your downward variance. They did not. They, of course, asked for more. They would like, but no, they didn't oppose it. I guess we should probably hold this case to await the decision of the Supreme Court and Carpenter. Your Honor, I would say this case, this court could go ahead and decide based on, even if we lose, if the United States loses on Carpenter, we argued, we've argued throughout that the Did the district court make a finding about that? Your Honor, I don't believe so. I believe the district court You would be asking us to make that finding? It seemed to me that if there's, if Carpenter holds that there is potentially some error here, that we would have to send it back potentially for the district court to think about that. And if there is a good faith argument, wouldn't the district court have to make that determination in the first instance? It would, Your Honor. So, thank you. So, anyway, the prejudice test is but for, I just don't believe there's evidence that but for the mistakes complained about, for like the Bruton issue, they aren't Bruton statements. So, there's no reason, I mean, there's no question. It's not surprising he didn't move to sever based on what he alleges are Bruton statements when they weren't Bruton statements. They don't clearly implicate Mr. Joyner. So, for these reasons, we believe that the district court did not abuse its discretion in not supplying substitute counsel for Mr. Joyner. Thank you. Was there any other questions? Thank you. Thank you, Mr. Treanor. Ms. Durrett. Thank you, Your Honor. Your Honor, I just want to briefly talk about a few things that the government mentioned. Mr. Treanor talked about the case of Nieder versus United States and talked about how not providing the supplemental instruction is harmless error. I'd like to point the court to other cases like Getz and Hastie from this court, which happened, you know, April of last year, where the court talked about a distinction between an instruction that is a very general instruction that leaves room for the jury to have to make a decision at a later time, or a very specific instruction that takes that discretion away from the jury. And I think in this case, when you have, and I understand what the court has said about what the judge said here, but I think for a lay person, for a juror, when he, and Mr. Treanor said they were instructed three times that the indictment is not evidence. They were actually only instructed one time, and that was right before closing argument. She said the indictment is not evidence. So the indictment had been read to them prior to Vourdier, and then she gave her instructions, and then there was closing argument. But for a lay person, a lay juror, to write this question out, what are the times, what are the dates, what are the locations? What do you say about, I thought his first rebuttal about that was pretty powerful. Look at the verdict form. You know, how would the jury have really known how to fill it out without some reference to the indictment? I realize that that's an issue, Your Honor, and I think the way that could have been cured is for the trial court to say, here is the indictment. Don't forget that you have to rely on your memory of the evidence to see if these claims in this document comply with the evidence, as opposed to just saying, here, what are the locations, what are the dates? This is the document. This helps you with the first part of your question. To answer the second evidentiary part of your question, you need to rely on your memory of the evidence. In that case, she But as Mr. Treanor said, and of course, a court district judge is never supposed to instruct on any element of the offense, but the question wasn't, didn't have anything to do with whether these two men did anything. It's what were the dates of the robberies? And nobody disputed that these robberies happened. The only dispute, obviously, is in most cases, were these the two guys that did it. I'm not seeing any harm that could have occurred or any problem the jury would have had from what occurred. And again, I would point the court to Hasty and to Getz, where the judge doesn't get to make the decision. The trial judge doesn't get to say, this element is satisfied. Or did she say that? Well, Your Honor, she said, here's the document that answers that question to answer the second part of your question. As to what was alleged, as to what the government has alleged. It might be helpful, too, is what she said, something like that. Well, they didn't ask what the government had alleged. They asked, when and where did the robberies, may I finish? When and where did the robberies occur? And she said, this document will help you answer that question. Thank you. May it help you answer that question. Thank you, Ms. Brunner. I believe that the government began their argument by asserting that I had not stated that there was a complete breakdown in communications. Let me be clear. I believe that there was a complete breakdown in communication, and I believe that Mr. Joyner established that. The next thing the government... Could the record be fairly read, though, as establishing that the court, at least, was inquiring enough to determine whether it thought there was a complete breakdown, and it determined that they were, in fact, still communicating? I don't believe that is the case, Judge Pryor. I believe that the transcripts established that the court wasn't asking about their communication. The court was focusing on the government's evidence, how, in general, a defense attorney would approach the evidence, why a defense attorney might yell at or throw things at a client, and what a great attorney Mr. Morrison was. In every single transcript, the judge says, Mr. Morrison has done everything he's supposed to be doing, and that isn't the question in a motion to dismiss and replace counsel. The next point the government made that I'd like to address is he said, Mr. Sturgis got counsel, got new counsel, so clearly Judge Baverman was willing to do that. Mr. Sturgis's... Mr. Joyner's motion says that Mr. Morrison interrogated him, intimidated him, believed he was guilty. They argued. He said he doesn't have to listen to me, and he doesn't want to help me. He's a threat to my freedom. He's working for the government. Mr. Sturgis's motion said my counsel doesn't listen to me. She doesn't tell the court we're having differences. She doesn't challenge the veracity of the government's evidence. She doesn't give me transcripts. We argue, and she's working for the government and doesn't have my best interests in mind. They're the same motion if you look at what they allege, but Mr. Sturgis got a new attorney, and Mr. Joyner didn't on virtually identical motions. Next thing I want to talk about is the prejudice. The government says said that Mr. Stowers... there's no evidence that Mr. Stowers wouldn't have pled guilty otherwise, and I want to address that because the original trial was set for June 28th, which was only about 20 days after the motion for speedy trial was filed and the motion for continuance was filed. The trial was continued until September 20th. Mr. Stowers didn't plead guilty until August 11th. Mr. Stowers likely, if he's of a mind to plead, would plead before whatever trial date was set. That's how it usually works. You set the date, you get the pleas. But again, how do you deal with the fact when the Speedy Trial Act had Mr. Morrison filed an objection pretty much dead on arrival given the rule about unsevered defendants? And I think had Mr. Morrison filed a proper severance motion that included the statements that Sturgis had made and possibly the statements that Stowers had made, I don't know because that didn't come up, but he somewhere in my briefs, I couldn't find it in my scurry, Mr. Morrison stated somewhere on the record and it's in my briefs that he didn't foresee this issue. So he didn't raise a severance issue on this basis. So we don't know what would have happened had he filed. We pretty much know what would have happened. I don't see did this 22 years. Judges granting a severance based on what I've seen here happens all the time. People need time, they need continuances, and unless it's exorbitant, there's some other real problem. Judge usually grants them. Yes, but where there is a speedy trial motion filed on behalf of one defendant and there is an objection, Mr. Joyner's constitutional right to a defendant's counsel being on trial, and I'm just saying had Mr. Morrison filed a proper severance motion that alleged all of the grounds that have now been raised in the appeal brief, there is a chance that the outcome would have been different. That's all my time. Thank you. Thank you, Mr. Brunner. We have your case. We note that both you and Mr. Rutt were court appointed. We appreciate you accepting the court's appointment and discharging your duty. So well this morning, thank you and have a good day.